IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MASSACHUSETTS

MICHELLE K. in Her Own Right and as
Natural Parent of C.K. and A. K.

      Plaintiff(s)            CIVIL ACTION

           v.                     NO.

PENTUCKET REGIONAL SCHOOL DISTRICT and
THE BUREAU OF SPECIAL EDUCATION APPEALS
And MASSACHUSETTS DEPARTMENT OF ELEMENTARY
AND SECONDARY EDUCATION, et. al.

      Defendant(s)

## **COMPLAINT**

## I. **PRELIMINARY STATEMENT**

1.     Michelle K., (hereinafter "Michelle") in her own right and as natural parent of

minor children C.K. (hereinafter "C.K.") and A. K. (hereinafter "A.K.") bring this action against

Pentucket Regional School District School Committee in their Official Capacity (hereinafter

"PENTUCKET"), Superintendent Jeffrey Mulqueen in his Official Capacity, Special Education

Director Michael Jarvis in his Official Capacity, John Tiano, prior Special Education Director in

his Individual Capacity from January 11, 2011 to December 3, 2012, (hereinafter "Tiano"),

Elaine Champion, Principal of Bagnall Elementary School, in her Official Capacity; and in her

Individual Capacity beginning January 11, 2008 ("hereinafter "Champion"), Jeffrey Q. Bostic,

MD beginning May 14, 2011 (hereinafter "Bostic"), the Bureau of Special Education Appeals

Division of Administrative Law Appeals (hereinafter "BSEA") and Reece Erlichman Director of

BSEA (hereinafter "Erlichman") in her Official Capacity, and in her Individual Capacity,

Cathryn Putney-Yaceshyn, Hearing Officer in her Official Capacity, Sara Berman, Hearing

Officer in her Official Capacity, Rosa Figueroa in her Official Capacity, and the Massachusetts Department of Elementary and Secondary Education ("DESE") Mitchell D. Chester, Commissioner, Division of Administrative Law Appeals ("DALA"), Richard Heidlage, Chief Administrative Magistrate in his Official Capacity and the Essex Superior Court, the Honorable Justice Timothy Feeley in his Official Capacity and all other necessary parties who Michelle preserves the right to add as justice so requires.

2.      This complaint is pursuant to Section 1983 for the combined actions of all defendants whose gross negligence in implementing and enforcing mandated procedural safeguards and/or in supervising and training personnel in their obligation to uphold federally mandated rights over the course of 11 years; and the knowing and intentional ongoing actions of the defendants named in their individual capacity which were done in performance of their administrative and supervisory duties which over the course of 7 years (since 2006) resulted in an abuse of process under the color of law; and malicious prosecution if applicable in this circuit to civil cases.

3.      These actions were done through use of regulations, rules, policies and customs whether real or distortions, under state statutes.

4.      These actions were in conflict with federal civil law and federal civil rights.

5.      These actions were also done in conflict with federally mandated rights conferred under the Individuals with Disabilities Improvement Act, ("IDEA"), 20 U.S.C. §1401 et seq. and Section 504 of the Rehabilitation Act.

6.      These actions were known on their face to be illegal by the defendants named in their individual capacities and by the absolutely immune persons who acted in a judicial capacity; thereby knowingly and intentionally deprived Michelle of her rights to due process

2

under the IDEA and Section 504 in all proceedings requested at the BSEA beginning in July 2007 in Michelle's attempts to secure a Free and Appropriate Public Education for her children C.K. and A.K. and these actions have caused irreparable educational harm to her children, financial injury to herself, and emotional harm to all.

7.      The factual background section of this complaint provides the supporting details of the following facts:

   a. On September 8, 2006 PENTUCKET filed a due process complaint against C.K. (BSEA #07-1116) in response to Michelle's disagreement with their December 2005 evaluations and request of a publicly funded Independent Educational Evaluation ("IEE"). In November 2006 Michelle prevailed in that action and was reimbursed for an IEE. PENTUCKET still refused to find C.K. eligible for Special Education and related services but did as a result of the due process proceeding, develop a 504 Plan with accommodation.

   b. On June 21, 2007 PENTUCKET filed a EXPEDITED due process complaint against C.K. (BSEA #07-0768) in response to Michelle's request for an updated evaluation due to C. K.'s failure to progress. Michelle withdrew her request and filed her first due process complaint the following week (BSEA #08-0198) to dispute PENTUCKET'S continued denial of eligibility for special education.

   c. This was resolved on January 11, 2008 in what was called a "Resolution Agreement" which was recommended by the Hearing Officer, Cathryn Putney-Yaceshyn.

   d. The injuries appear to be traced back to this fateful event because Michelle was apparently the only person who was not aware that C.K.'s IEP was incorporated

3

into this document, making it a "private settlement agreement" as opposed to a legitimate IEP under the IDEA. This was an intentional fraudulent concealment with intent to deceive Michelle into thinking they had resolved the basis of the complaint. However, upon signing the document, PENTUCKET then refused to conduct an agreed upon Reading Evaluation pursuant to the terms, because come to find out, they'd already completed it without Michelle's consent and pre-determined that C.K. was not eligible for reading services.

e.   Michelle rejected their IEP and a few days later she received a "dismissed without prejudice" order from the Hearing Officer in BSEA 08-0198 without her consent as well. No 'show cause" order was ever issued and no withdrawal was ever requested.

f.   The following due process complaints made subsequently by Michelle all were either entirely dismissed or in the single Hearing Decision rendered (BSEA 10-6783) substantial claims were omitted by the Hearing Officer without Michelle's knowing consent [1]: BSEA# 10-6783 filed on April 22, 2010 and BSEA# 11-0931 filed on September 7, 2010 which were supposed to have been consolidated but no part of the decision addresses the issues within 11-0931; BSEA# 12-9569 filed on July 12, 2012 all filed on behalf of her son C.K., and BSEA #12-8636 filed on May 25, 2012 on behalf of her daughter A.K.

---

[1] See § 1983. "Civil action for deprivation of rights: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

g. No Judicial Review of Michelle's Appeal of BSEA# 10-6783 and BSEA #11-0931 at the Massachusetts Essex Superior Court, which was dismissed sua sponte by Justice Feeley upon "request" of the defendant, who alleged it was Moot.

h. On June 6, 2013, Michelle and her now adult daughter Alicia filed a complaint with the Department of Elementary and Secondary Education (DESE) to investigate the failure of PENTUCKET to comply with the requirement of convening a Resolution Meeting which occurred within the required time frame. However the DESE refused to investigate having been confronted with evidence contrary to PENTUCKETs.

i. On July 17, 2013 Michelle and her now adult daughter Alicia filed a subsequent complaint jointly to investigate the failure of PENTUCKET to comply with the transfer of authority at age of majority. However, DESE refused to investigate this complaint as well and in fact never even responded to Michelle or Alicia.

8. The combined actions of all defendants whether done individually or in conspiracy, has caused the deprivation of the Plaintiff's 4th amendment constitutional rights and 14th amendment constitutional rights to both procedural and substantial due process rights under the color of law which has deprived the Plaintiffs of their right to notice, right to present evidence and testimony, the right to an impartial due processing hearing under both IDEA and 504/ADA, which has repeatedly caused injury by their customs and policies resulting in a deprivation of a declaratory decree and declaratory relief.

9. Plaintiff invokes the judicial review provisions of the Equal Protection Clause of the United States Constitution, and 42 U.S.C. § 1983 in connection with PENTUCKET actions denying Michelle and her children mandatory procedural safeguards, several impartial due

5

process hearings which denied them declaratory and substantial relief requested in ALL BSEA
due process hearing request beginning on July 11, 2007 to date. PENTUCKET's actions set
forth below were done intentionally or with deliberate indifference to Plaintiff's federal statutory
rights. The District knew or should have known that its' actions as set forth herein violated the
standards of conduct which were legally required at the time those actions took place.

10.     Plaintiffs invoke the judicial review provisions of the Equal Protection Clause of
the United States Constitution, and 42 U.S.C. § 1983 in connection with the BSEA actions
denying Michelle, Alicia and C.K. which denied them declaratory and substantial relief
requested in ALL BSEA due process hearing request beginning on July 11, 2007 to date. The
BSEA's actions set forth below were done intentionally or with deliberate indifference to
Plaintiff's federal statutory rights. The BSEA knew or should have known that it's actions as set
forth herein violated the standards of conduct which were legally required a the time those
actions took place. The hearing officer did not commit discretionary acts; she violated
procedural safeguards which are mandatory and required.

11.     Plaintiffs invoke the judicial review provisions of the Equal Protection Clause of
the United States Constitution, and 42 U.S.C. § 1983 in connection with DESE actions denying
Michelle and Alicia a procedurally mandated investigation to the violations of procedural
safeguards, specifically a resolution meeting under 1415(f)(1)(B)(i)(I); 34 CFR section 300.510,
and transfer of rights at age of majority under 34 CFR section 300.520. The DESE's actions
were done intentionally or with deliberate indifference to Plaintiff's federal statutory rights. The
DESE knew or should have known that it's actions as set forth herein violated the standards of
conduct which were legally required a the time those actions took place.

6

12.     Plaintiffs invoke the judicial review provisions of the IDEA 20 U.S.C. 1415(j)) in connection with the Hearing Officers decision to deny Michelle her procedurally protected, federally mandated due process hearing rights on January 11, 2011 which effectively denied the Provision of FAPE permanently to C.K. by omitting substantial claims and misrepresenting the burden of proof on the prospective educational claims, misrepresenting that student was provided FAPE on the preceeding IEP period, and as she violated mandatory procedural safeguards by creating a remedy that neither party requested, by allowing PENTUCKET to discriminate against Michelle and C.K. during the proceeding and by omitting Elaine Champion from the Decision who testified as a witness and who had committed perjury under oath.[2]  Plaintiff is entitled to a judicial review of BSEA 10-6783 and a Hearing on the omitted claims from the hearing as this is conduct that is capable of being repeated and is not moot.

## II.     JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.  Plaintiff's causes of action arise under 20 U.S.C. §1402, 29 U.S.C. §794, 42 U.S.C. § 2000d, §§ 12161-12165 and § 1983.  Venue in this District is proper under 28 U.S.C. § 1391 because Plaintiffs reside within Essex County, Massachusetts, where Defendant School District is located, and where the Plaintiff's cause of action arose.

14.     § 1983.  "Civil action for deprivation of rights: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity,

---

[2] Michelle discovered after the hearing that Elaine Champion was previously employed by the Department of Education and worked in the same location as the Hearing Officer.

or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

15.     As a preliminary matter, the MCRA does not provide a cause of action against municipal defendants. *Kelley v. LaForce*, 288 F.3d 1, 11 (1st Cir.2002). The state law claims against the Town and its Police Department must, therefore, fail." "The federal civil rights statute imposes no such limitation. To prevail against the Town on her federal claim, the plaintiff must demonstrate that the violation of her civil rights arose out of the official custom or policy of the municipality. *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). See Johnson v. Town of Nantucket, 550 F. Supp. 2d 179 - Dist. Court, D. Massachusetts 2008

16.     "For procedural due process purposes in a claim of malicious prosecution, the plaintiff usually must show the alleged conduct deprived him of liberty by a distortion and corruption of the processes of law, i.e., corruption of witnesses, falsification of evidence, or some other egregious conduct resulting in a denial of a fair trial. *Johnson v. Barker*, 799 F.2d at 1400. *See also Coogan*, 820 F.2d at 175; *Barnier*, 810 F.2d at 599-600. *See generally* Nahmod, *Civil Rights and Civil Liberties Litigation*, 2d Ed., sec. 3.10 (1986). In addition, the plaintiff must show there was no adequate state post deprivation remedy available to rectify the harm.

17.     We agree with the majority rule that the defendant must subject the plaintiff to a deprivation of constitutional magnitude in order to state a claim under Section 1983. *Landrigan*, 628 F.2d at 745. *See also Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir.1988); *McLaughlin v. Alban*, 775 F.2d 389 (D.C.Cir.1985).

8

## III.    PARTIES

18.    Michelle K. is natural mother of C.K. and A.K. At all relevant times to this action, she has resided in Groveland, Massachusetts and within the geographical boundaries of the District. Michelle K. in her own right and on behalf of C.K. and A.K. was denied federally protected rights under IDEA and 504 and the Equal Protection Clause of the U.S. Constitution.

19.    PENTUCKET is a local educational agency (LEA) within the meaning of the IDEA and Section 504. As such, it receives federal funds for the purpose of educating children with disabilities within its boundaries. The District is also a "public entity" as defined by Title II of the ADA. 42 U.S.C. § 12131(1). PENTUCKET has the responsibility under federal and state law to assure that students with disabilities are properly evaluated, identified, and provided with appropriate special education, related services, supplemental supports, and/or accommodations to enable them to achieve meaningful education benefit and enjoy equal educational opportunities in relation to their typical developing age mates, and in the least restrictive appropriate environment given their individual needs.

20.    The BSEA has the power and the duty to conduct a fair hearing; to ensure that the rights of all parties are protected in accordance with all applicable law. 603 CMR 28:08(5)(a)(b)(c); M.G.L. c. 69, § 1B; c. 69, §§ 1J and 1K, as amended by St. 2010, c. 12, §3; c. 71, § 38G.

21.    The DESE has the responsible to implement the IDEA and 504 and has abrogated it's 11th Amendment Immunity for its' receipt of federal funds under the IDEA.

## IV.    STATUTORY AND REGULATORY BACKGROUND

22.    "Section 1983 is a vehicle for vindicating substantive rights conferred by the
        Constitution or laws of the United States that have been violated by persons acting

9

under color of state law. *See Graham v. Connor,* 490 U.S. 386, 393-94 (1989);

*Albright v. Oliver,* 510 U.S. 266, 315 (1994).

23.     In a claim for Malicious Prosecution "[t]here must also be proof of an ulterior

motive" to gain something collateral to the legitimate purpose of the proceeding.

*Ladd,* 424 Mass. at 200; *accord Psy-Ed Corp.,* 459 Mass. at 714 & n. 36. See

Fontanez v. City of Worcester, Dist. Court, D. Massachusetts 2012.

24.     The elements of the tort of abuse of process are (1) that "process" was used against

plaintiff (2) for an "ulterior or illegitimate purpose" and (3) that some harm occurred

as a result. *Vittands v. Sudduth,* 49 Mass. App. Ct. 401, 406 (2000).[23] "The essence

of this tort is the malicious use of legal process to accomplish some ulterior purpose

for which it was not designed or intended, or which was not the legitimate purpose of

the particular process employed." *Carroll v. Gillespie,* 14 Mass. App. Ct. 12, 26

(1982) (quotation and internal citation omitted). "The `ulterior purpose must be to

gain some collateral advantage' indirectly that is not properly involved in the

proceeding, such as the surrender of property or payment of money." *Empire Today,*

*LLC v. Nat'l Floors Direct, Inc.,* 788 F. Supp. 2d 7, 24 n.127 (D. Mass. 2011)

(quoting *Psy-Ed Corp. v. Klein,* 459 Mass. 697, 713-14 (2011)).[24]" . See Fontanez

v. City of Worcester, Dist. Court, D. Massachusetts 2012.

25.     "The Supreme Court and the First Circuit Court of Appeals have set forth a preferred

procedure for the analysis of qualified immunity in § 1983 claims. First, the Court

must ask whether the plaintiff has "alleged the deprivation of an actual constitutional

right." *Abreu-Guzman v. Ford,* 241 F.3d 69, 73 (1st Cir.2001) (*citing Wilson v.*

*Layne,* 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). Second, the Court

must determine whether the right was "clearly established at the time of the alleged violation". *Abreu-Guzman*, 241 F.3d at 73. Finally, if those two questions are answered in the affirmative, the Court turns its attention to the specific conduct alleged and asks whether an objectively reasonable officer, performing discretionary functions, would have understood that his or her conduct violated that clearly established constitutional right. *Id.* (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)

26.     "The doctrine of qualified immunity shields state officials from liability for damages under §1983 where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "[T]he qualified immunity inquiry . . . allows . . . for the inevitable reality that `law enforcement officials will in some cases reasonably but mistakenly conclude that [their conduct] is [constitutional], and . . . that . . . those officials — like other officials who act in ways they reasonably believe to be lawful — should not be held personally liable." *Hegarty v. Somerset Cnty.*, 53 F.3d 1367, 1373 (1st Cir. 1995), quoting *Anderson v. Creigton*, 483 U.S. 635, 640 (1987) (emphasis omitted). The line properly drawn is not between the constitutional and unconstitutional, but between acts that although unconstitutional are nonetheless objectively reasonable and acts that are unconstitutional on their face. *See Cox v. Hainey*, 391 F.3d 25, 31 (1st Cir. 2004). The doctrine is not merely a defense to liability but also "a limited `entitlement not to stand trial or face the other burdens of litigation.'" *Iqbal*, 556 U.S. at 672, quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). "Accordingly, qualified immunity should be resolved at the earliest possible

11

stage of litigation." *Rocket Learning, Inc. v. Rivera-Sanchez,* 2013 WL 1668229, at
*5 (1st Cir. April 18, 2013), citing *Maldonado v. Fontanes,* 568 F.3d 263, 268 (1st
Cir. 2009).

27.   "A state court summary judgment order may be modified or vacated following
      removal of the action, see Hyde Park Partners, L.P. v. Connolly, 839 F.2d 837, 842
      (1st Cir.1988); 28 U.S.C. § 1450, upon a determination that it does not comport with
      Fed. R.Civ.P. 56, see RTC v. Northpark Joint Venture, 958 F.2d 1313, 1316 (5th
      Cir.1992), cert. denied, ___ U.S. ___, 113 S.Ct. 963, 122 L.Ed.2d 120 (1993). As
      with any summary judgment order, id., we review the district court ruling de novo,
      employing the identical summary judgment criteria incumbent upon the court below,
      Velez-Gomez, 8 F.3d at 874-75. Thus, summary judgment will be upheld if the
      record, viewed in the light most favorable to the nonmoving party, discloses no trial
      worthy issue of material fact, and the moving party has demonstrated its entitlement
      to judgment as a matter of law. Id.  See FDIC v. Bay Street Development Corp., 32 F.
      3d 636 - Court of Appeals, 1st Circuit 1994.

28.   81a. Exception to pleading requirement, fraud. A relaxed rule of pleading for fraud
      claims may be allowed as an exception to requirement of pleading fraud with
      particularity, where the alleged fraudulent conduct took place over a long period of
      time or involved numerous occurrences. U.S. ex rel. Ellis v. Sheikh, W.D.N.Y.2008,
      583 F.Supp.2d 434. Federal Civil Procedure ⟲636

29.   "The Massachusetts Civil Rights Act provides a right of action to any person whose
      exercise or enjoyment of rights secured by the federal or state constitution or laws has
      been interfered with by "threats, intimidation or coercion." Mass. Gen. Laws ch. 12, §

11I.[17] The statute thus contemplates a two-part sequence: liability may be found where (1) the defendant threatens, intimidates, or coerces the plaintiff in order to (2) cause the plaintiff to give up something that he has the constitutional right to do. *Goddard v. Kelley*, 629 F. Supp. 2d 115, 128 (D. Mass. 2009). The MCRA affords qualified immunity to public officials to the same extent that § 1983 does. *Rodriques v. Furtado*, 410 Mass. 878, 881, 885 (1991)." See Fontanez v. City of Worcester, Dist. Court, D. Massachusetts 2012.

30. "FERPA protects education records and personally identifiable information in those records from improper disclosure. 20 U.S.C.A. § 1232g. However, disclosure pursuant to a subpoena or judicial order is proper when done in compliance with the requirements of FERPA and its regulations. 20 U.S.C.A. § 1232g(b). Subsection (b) of section 1232g governs disclosure of records and information. The applicable subsection here, subsection (b)(2), requires that the parents and the students be notified of any orders or subpoenas before "personally identifiable information" in education records is disclosed pursuant to judicial order or lawfully issued subpoena, with certain exceptions not applicable here. The language of section (b)(2) follows:(2) No funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of releasing, or providing access to, any personally identifiable information in education records other than directory information, or as is permitted under paragraph (1) of this subsection, unless —(A) there is written consent from the student's parents . . . or(B) except as provided in paragraph (1)(J), such information is furnished in compliance with judicial order, or pursuant to any lawfully issued subpoena, upon condition that parents and the

13

students are notified of all such orders or subpoenas in advance of the compliance therewith by the educational institution or agency. . . .20 U.S.C.A. § 1232g(b)(2). Accordingly, parents and students need to be notified before information is disclosed pursuant to a subpoena or court order when the information to be released includes "personally identifiable information" as defined by FERPA. See 20 U.S.C.A. § 1232g(b) and 34 C.F.R. § 99.31. )." See Doe v. State, Dist. Court, SD Ohio 2013.

31.     Section 504 also requires that students with disabilities be provided FAPE. In addition, Section 504 prohibits the exclusion of, or discrimination against, any otherwise qualified individual with a disability by federal funds receipts, as does Title II of the ADA, 42 U.S.C. § 12132, et seq. Failure to provide accommodations and supplemental services constitutes discrimination for the purposes of both 504 and ADA.

32.     Both the IDEA and Section 504 require each State and Local Educational Agency (LEA) to locate, identify, and comprehensively evaluate every child with a disability who resides within its boundaries, whether or not those children are enrolled in the public school system. 34 C.F.R. § 300.125; 34 C.F.R. § 104.35.

33.     Both the IDEA and Section 504 provide procedural safeguards to enable meaningful parental participation in matters concerning their child's educational program, and allow parents to obtain administrative and judicial review of school districts' decisions concerning their child's education.

34.     On July 1, 2005, the Individuals with Disabilities Education Improvement Act (IDEIA) went into effect. The IDEIA amends the IDEA in certain respects. Among other things, it contains an express statute of limitations for claims of compensatory education. However, the IDEIA is not retroactive; moreover, it did not amend Section 504.

14

35. Even where the IDEIA applies, a parent's claims for compensatory education are tolled when "the parent was prevented from requesting a hearing due to (i) specific misrepresentation by the local educational agency that it had resolved the problem forming the basis of the complaint; or (ii) the local education agency's withholding of information from the parent that was required under this part to be provided to the parent. 20 U.S.C. § 1415 (f)(3)(D).

**Statute of Limitations for Claims for Damages under Section 1983 Federal Tort**

."_"See Chardon v. Fernandez, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981) (Section 1983 action accrues when plaintiff has notice of dismissal); United States v. Kubrick, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979) (cause of action under Federal Torts Claims Act accrued when plaintiff is aware of injury and its probable cause)." . See Torres v. Superintendent of Police of Puerto Rico, 893 F. 2d 404 - Court of Appeals, 1st Circuit 1990.

36. "Courts usually apply equitable tolling where plaintiffs can show "excusable ignorance" of the statute of limitations caused by some misconduct of the defendant. Kale v. Combined Insurance Company of America, 861 F.2d 746, 752 (1st Cir.1988). See also Cano v. United States Postal Service, 755 F.2d 221, 222-223 (1st Cir.1985). Id.

37. "For substantive due process purposes, the alleged malicious prosecution must be conscience-shocking. See Hand v. Gary, 838 F.2d at 1424; Barnier v. Szentmiklosi, 810 F.2d 594 (6th Cir.1987); Johnson v. Barker, 799 F.2d 1396, 1400 (9th Cir.1986). "Conscience-shocking" conduct will of course be determined on a case-by-case basis. "[W]hat is due process of law depends on circumstances. It varies with the subject-matter and necessities of the situation." Moyer v. Peabody, 212 U.S. 78, 84, 29 S.Ct. 235, 236, 53 L.Ed. 410 (1909) (Justice Holmes) In cases of a Section 1983 malicious prosecution claim, substantive due process violations have

included: seven hours of detention and accompanying humiliation, ridicule and mental anguish, *Conway v. Village of Mount Kisco,* 750 F.2d 205 and 758 F.2d 46 (2nd Cir.1985), *cert. den.,* 479 U.S. 84, 107 S.Ct. 390, 93 L.Ed.2d 325 (1986); filing charges maliciously in an attempt to suppress plaintiff's First Amendment right to make comment concerning a public official's duties, *Losch,* 736 F.2d 903; fabricating charges, falsifying facts, destroying evidence, and strip searching plaintiff because of his race, *Karim-Panahi,* 839 F.2d 621; and falsifying police reports, contriving charges and detaining plaintiff in manacles for reasons of race, *Usher,* 828 at 562.

## VI.    ADMINISTRATIVE EXHAUSTION FUTILITY

38.    Michelle requests that due to the extensive procedural violations, fraud and misrepresentation found in the administrative record(s) that the Court apply the exception to administrative exhaustion on all issues that have not, through no fault of Michelle, been administratively exhausted.

## VII    FACTUAL BACKGROUND

### Ongoing Procedural Safeguard Violations by BSEA from 2007 – 2013

38.    As a precursor, it is important to note that C.K.'s first evaluation by PENTUKET was done in 2003 at the request of his first grade teacher who referred him within the first weeks of the school year. PENTUCKET's psychological evaluation reported a significant disparity between his verbal score (93%) and perceptual score (34%) and included a recommendation for a language based learning program, yet the "team" found him ineligible for special education and related services. Michelle did not reject the finding because she relied on the education experts having had no prior experience in special education herself.

39.    After the two BSEA due process complaints requested by Pentucket and the one

BSEA due process complaint requested by Michelle as noted above, Michelle did not

request another hearing until more than two years later and again it was because

PENTUCKET was refusing to evaluate C.K. despite not being evaluated in almost 5

years by then (March 2010).

40.    Michelle requested BSEA 10-6783 on April 22, 2010.  On June 2, 2010 without ever

requesting production of documents, Reece Erlichman violated Michelle's and C.K.'s

right to be free from state intrusion in obtaining private and privileged evidence

without notice and without proper statutory or judicial authority; her right to not be

deprived of property for an ulterior purpose when Reece Erlichman, then Acting

Director of the BSEA authorized PENTUCKETs request for 4 separate Subpoena

Duces Tecum issued on June 2, 2010 during the course of BSEA 10-6783 against the

following non-parties: Joseph Moldover, Psy.D., 555 Washington Street, Wellesley,

Massachusetts, Keeper of the Records at Landmark School, 429 Hale St. Prides

Crossing, Ma, Jeffrey Drayer, Ph.D. 555 Washington Street, Wellesley, Ma, and

Keeper of the Records, Integrated Center for Child Development, 193 Oak Street,

Suite 1, Newton, Ma.

41.    These Subpeona Duces Tecum state "YOU ARE HEREBY COMMANDED in

the name of the Commonwealth of Massachusetts, Department of Education, Bureau of Special

Education Appeals, in accordance with the provisions of MGL c. 30A Section 12, 901 CMR

$1.01(10)(g)^3$ and Rule VIII of the Hearing Rules for the Special Education Appeals, to provide

---

[3] Allegedly this is either a typographical error or intentional misrepresentation as MGL c 30A, Section 12 regulation
authorizing Supeona's is 801 CMR 1.01(10)(g) and there is no 901 CMR at all in Massachusetts Regulations
according to the record and confirmed by a Massachusetts law librarian named Robin.

documents set forth in schedule A to Attorney Colby C. Brunt, Stoneman, Chandler & Miller, LLP, 99 High Street, 16th Floor, Boston, MA 02110 on or before June 4, 2010.

42.    Schedule A states "Copies of all documents in the possession, custody and/or control of (insert name of non-parties), pertaining to (insert name and date of birth of C.K.), including but not limited to:

> Complete copies of any and all records, reports, evaluations, testing protocols, assessments, whether formal or informal, correspondence, electronic mail messages, telephone records, tape recordings, video recordings, photographs, notes, minutes, diaries, letters, memoranda, agreements, contracts, and tests.
>
> If any documents are not being produced, please provide a separate list identifying the date of each document, the document's author, the title of the document or a brief description of the document thereof, and a statement of reasons that said document is not being produced."

43.    Michelle knew that PENTUCKET requested the Subpeona Duces Tecum because she received a copy of the request but because the BSEA Rules allow for this, she reasonably believed these were legally allowable.

44.    Michelle also knew that Dr. Joseph Moldover, Pys.D. complied with the Subpeona because he sent copies of everything he provided to Michelle.

45.    However, Michelle did not know that they were authorized by Reece Erlichman until she received the copies of the authorized Subpoena's in the Administrative Record of BSEA 10-6783, Volume 1 of 4 dated October 3, 2011 (See AR at 65, 66, 67, 68, 69, 70, 71, 72).

46.    Therefore the BSEA did not notify Michelle of this violation of privacy and give her an opportunity to object.

18

47. Further, Michelle alleges that there is no statutory authority for the Department of Education or the Bureau of Special Education Appeals to issue Subpeona Duces Tecum.

48. Michelle also alleges that there was no legally valid reason for requesting or issuing these Subpeona's and the facts and circumstances demonstrate that the both PENTUCKET and the BSEA and the Department of Education knew or should have known that this was an illegal action with no probably reason. PENTUCKET had not even requested Production of Documents or any Discovery whatsoever of Michelle in this proceeding at any time. In fact, Michelle only recently learned about the legal issuance of Subpeona's in Fed.R.Civ.P. 45 in preparation for the Appeal of BSEA 12-8636 to the Federal District Court.

49. On June 9, 2010 PENTUCKET filed a "Partial Motion to Dismiss" and interestingly did not argue that Parent signed a private settlement agreement asking for a dismissal. However, the Hearing Officer noted in a footnote of her Ruling on the Motion to Dismiss that the Resolution Agreement appeared to be a private settlement agreement.

50.

51. At the Hearing the Hearing Officer inappropriately excluded C.K.'s 2003 evaluation by PENTUCKET, saying that it was "stale". However, there was no PENTUCKET evaluation that was not "stale" and the 2005 was already determined to be inappropriate so therefore, it is inconceivable that she found C.K.'s placement prior to the 2010 IEP to be appropriate.

52. The additional facts and evidence within the administrative records and additional evidence will show that the BSEA and PENTUCKET have fraudulently concealed their actions with intent to deceive Michelle in order to avoid rendering declaratory and substantial relief by coercing her into a settlement agreement by denying her any resolution meetings to obtain an

enforceable settlement agreement that provided FAPE and the fact that she repeatedly refused to
sign it without a court approval and ongoing jurisdiction based on the Resolution Agreement
which Michelle had no knowledge that it was not a valid enforceable resolution agreement which
provide FAPE.

53.     The only due process hearing request that was partially exhausted was BSEA 10-
6783 was appealed by Michelle due to the Hearing Officer's failure to address several counts
including but not limited to acts of retaliation under section 504.

54.     The decision was arbitrary and capricious wherein PENTUCKET had the burden
of proof on the prospective educational placement by failing to demonstrate that their 2010
evaluation was appropriate.

55.     The Administrative Record shows PENTUCKET initially refused to conduct this
evaluation despite fact they had not re-evaluated C.K. since December 2005.

56.     The December 2005 evaluation was previously determined not to be appropriate
by the Hearing Officer in BSEA 07-1116 which was a due process hearing requested by
PENTUCKET against C.K. wherein Michelle prevailed as Pro Se on his behalf evidenced by the
Orders dated September 27, 2006 and October 12, 2006 clearly instruct Parent to obtain costs for
additional Independent Evaluations and provide to PENTUCKET after which PENTUCKET
reimbursed Michelle for Independent Evaluation.

57.     During the BSEA 10-6783 proceeding PENTUCKET knowingly interfered with
Michelle's right to seek an appropriate private special educational placement by the Special
Education Director's written notice to Michelle of his explicit instruction to C.K.s' teachers NOT
to complete questionnaires required by Landmark School in order to consider C.K.'s application.

58.     This intentional interference with Michelle's right to seek private placement
precluded Michelle from obtaining the relief sought. (See A.R. at 102, BSEA 10-6783).

59.     Michelle notified the Hearing Officer of this interference (See A.R. at 101, BSEA
10-6783) however no action was taken by the Hearing Officer.

60.     The Decision finds that PENTUCKET'S prospective placement denied C.K.
FAPE, but due to TIANO'S interference and the BSEA's gross negligence, no appropriate
prospective placement was available and so C.K. was sent back to the inappropriate placement
until June 2012, almost two years later when C.K. failed 9th grade and Michelle K. unilaterally
placed him at Landmark School.

61.     Also in BSEA 10-6783 Michelle requested an IEE at public expense for the
ongoing failure of PENTUCKET to appropriately evaluate C.K.

62.     These actions resulted in depriving Michelle and her children C.K. and A.K. not
only their entitlement to a Free and Appropriate Public Education, but also their right not to be
discriminated against, to enjoy equal educational opportunities, to an impartial due process
hearing, to present evidence and to testify, to their personal privacy and protection from search
and seizure, and to a declaratory decree and declaratory relief which is not remediable under
Massachusetts State Law to the extent that these actions were done intentionally with intent to
harm for an ulterior motive.

63.     In her decision however, the hearing officer exceeded her statutory authority.
Instead of ordering the relief requested by the Parent (Publicly Funded IEE) she crafted her own
variation of relief, without either party having requested it, and ordered Pentucket to hire an
"independent consultant" to observe the student's current and prospective placement at the high
school and to propose an appropriate placement. Importantly the hearing officer gave

PENTUCKET the right to choose the Evaluator if Parent did not agree. Massachusetts Law requires judicial intervention where parent does not agree with the decision of the BSEA.

64.     Michelle filed for an Appeal of the Decision at the Superior Court Docket # ESCV-2011-00691-A: The Administrative Record was due on October 3, 2011.

65.     On October 11, 2011 and October 18, 2011 Michelle received a certified copy of the administrative record and noticed right away that a substantial amount of the record was in fact missing.

66.     On October 25, 2011 Michelle filed a Motion for Leave to Present Testimony of Alleged Irregularities in Procedure and to Present Additional Evidence (which in fact was also referring to Missing Evidence).

67.     On October 26, 2011 Assistant Attorney Julie Goldman wrote a handwritten memorandum to Reece Erlichman, that is now in the Appeal Record since it was apparently accidentally sent to Michelle instead. It says "We have until 11/7 to serve a response. Please call at your earliest convenience so we can plan our response. I'm primarily interested in the documents she alleges are missing from the administrative record. Should we oppose or was there an oversight?" Shortly thereafter, the BSEA Opposed.

68.     Justice Feeley heard oral argument on January 7, 2012 and entered an order for a Supplemental administrative deadline of 2/28/2012.

69.     On 2/28/2012 Plaintiff submitted an Affidavit and Verified Facts including most of the missing administrative record which she was able to reconstruct from the original record which took her over 100 hours. Most of the missing documents were docket entries not exhibits.

70.     Meanwhile, PENTUCKET interpreted the hearing officer's order to allow them to choose a Psychiatrist who had recently been indicted in the Forest Labs debacle for his role in

"pitching" the prescribing of anti-depressants to adolescents for whom they had not been approved by the FDA, none other than Dr. Jeffrey Q. Bostic, M.D.

71.     C.K. had absolutely no record of emotional or behavioral problems and was in fact a very well liked student by his teachers as he was always polite and respectful. Nor had Pentucket had never conducted any evaluations in those areas as they never had any need. Dr. Bostic's curriculum vitae showed absolutely no experience in developing programs for students with language based learning disabilities. Michelle objected to Dr. Bostic on those basis but PENTUCKET proceeded in hiring Dr. Bostic.

72.     PENTUCKET's attorney told Michelle that the Hearing Officer found emotional issues and that was the reason for the order. Michelle had not been aware of that in reading the BSEA posted decision, but the law library copy filed in MERS does have it as a subtitle, which Michelle only found in late 2012.

73.     Michelle refused to consent to Dr. Bostic so instead of initiating a due process hearing as required, PENTUCKET had him conduct an observation only of his current program in 8th grade which of course was ending in June 2011. Dr. Bostic wrote a lengthy report which essentially made up a pretend diagnosis called "Passive Aggressive Disorder" and then PENTUCKET held a meeting where Dr. Bostic presented his report to faculty at PENTUCKET without notifying Parent in advance of the meeting and added this information to C.K.'s proposed IEP.

74.     Pentucket had also not fulfilled their obligation of Stay Put Rights specifically requested by Michelle after the Hearing Decision which should have continued at least the minimal services he'd been receiving at the time she rejected the proposed IEP in February 2010.

23

75. In August/September the Assistant Attorney General withdrew her appearance after Michelle wrote her that there was a conflict of interest in PENTUCKET'S demands of including both A.K. and C.K. in the same settlement agreement. In October Amy Spector replaced her as BSEA Counsel.

76. Michelle refused to sign the agreement until in November, PENTUCKET through its' attorney represented to MICHELLE in writing that they would remove the offending language regarding Michelle's case involving her daughter.

77. However, the day they sent the revised agreement on November 29, Attorney Brunt not only did not remove it, but in addition, she said that they were going to terminate Christopher's placement without any further obligation to him in a take it or leave it "LAST OFFER" on Friday at 4:00pm, and demanded Michelle's response by Sunday evening at 9:00pm or they would change legal tactics.

78. At this point C.K. had been at Landmark School since September based on Michelle's reliance of a joint stipulated court approved settlement agreement with ongoing jurisdiction and did not have the funds to pay for Landmark School or Landmark College where A.K. was also unilaterally placed since PENTUCKET left her without any placement at all in June 2012.

79. Michelle sign the settlement agreement and agreed to dismiss Pentucket in all actions related to C.K. but not the BSEA. To that end, in January 2013 Michelle provided a Presentment Letter to the Attorney Generals' Office which is also on the record in the Appeal of BSEA 10-6783 at ESCV2011-00691-A and requested and stay.

80.     On February 11, 2013 Judge Feeley dismissed this Appeal without any notice to Plaintiff and without any explanation and importantly without any Motion to Dismiss having ever been filed.

81.     On March 11, 2013 Rosa Figueroa, Hearing Officer at the BSEA dismissed A.K.'s claims filed on May 25, 2012 (See 13-cv-11414-DPW).

82.     In May 2013 Michelle received Transcriptions from the Hearings at Superior Court, specifically on November 1, 2012 where the discussion was about Michelle's request for joint stipulation for court approval and PENTUCKET stating for the first time that they opposed it. Importantly, the transcript is incomplete, somehow omitting the appearance of BSEA's counsel Amy Spector, Esquire who is an Assistant Attorney General acting as Private Counsel in this matter and who PENTUCKET has represented to Michelle in writing was Opposed to a court approved settlement agreement.

83.     . Notably, on November 6, 2013 Michelle returned to the Superior court to inquire about omitted transcripts of November 1, 2012, and requested the docket. She found for the first time 5 copies of a document numbered Docket #28, Memorandum and Order. Despite Michelle having visited and reviewed the docket on two prior occasions since the dismissal and this was never provided within the docket before

84.     Michelle's question is what possible valid reason could the BSEA have against providing FAPE? This is their mandate and the purpose of the federal funding for which they have abrogated their 11th amendment immunity.

85.     Michelle alleges these actions were done either to deprive her of her property rights in retaliation or to cover up their illegal actions to avoid responsibility.

86.     Michelle also alleges that the Massachusetts Statutes and regulations authorizing

the Director of the Bureau of Special Education to issue subpeona's against students without

parents knowledge to conduct fishing expeditions is illegal and in conflict with federal law and

statutory authority.

VIII.   **CAUSES OF ACTION**

### COUNT I:  DEPRIVATION OF DUE PROCESS OF THE LAW AND WITHHOLDING

### OF A DECLARATORY DECREE OR RELEIF IN BSEA 08-0198, BSEA 10-6783, BSEA

### 11-0931, AND BSEA 12-9569

87.     The factual averments set forth in Paragraphs 1 – 86 are re-alleged and

incorporated by reference herein.

### COUNT II: THE DISTRICT, THROUGH BAD FAITH AND GROSS MISMANAGEMENT, INTENTIONALLY DISCRIMINATED AGAINST MICHELLE ON THE BASIS OF HER CHILDREN'S DISABILITIES IN VIOLATION OF HER RIGHTS UNDER SECTION 504 OF THE REHABILITATION ACT AND THE ADA

88.     The factual averments set forth in Paragraphs 1 – 135 are re-alleged and

incorporated by reference herein.

### COUNT III:  INTENTIONAL DISCRIMINATION AGAINST MICHELLE'S CHILDREN IN VIOLATION OF HER RIGHTS PURUSANT TO THE EQUAL PROTECTION CLAUSE AND SECTION 1983

89.     The factual averments set forth in Paragraphs 1-141 are re-alleged and

incorporated by reference herein.

### COUNT IV: FRAUDULENT CONCEALMENT WITH INTENT TO DECIEVE IN ORDER TO OBTAIN SOMETHING OF VALUE AND DEPRIVED MICHELLE OF HER CONSTITUTIONAL AND FEDERAL RIGHTS

90.     The factual averments set forth in Paragraphs 1-141 are re-alleged and

incorporated by reference herein.

## COUNT V: TORT DAMAGES FOR INTENT TO HARM UNDER COLOR OF LAW BY USE OF CUSTOM, POLICY, STATUTE, REGULATIONS AVAILABLE UNDER SECTION 1983 WHEN NO STATE REMEDY EXISTS

91.    The factual averments set forth in Paragraph 1-146 are re-alleged and incorporated by reference herein.

92.    Parent's who succeed on any significant issue in any action or proceeding under the IDEA and/or Section 504 are prevailing parties and thereby entitled to recover their reasonable attorney's fees and costs. Plaintiffs hereby retain this right to legal representation whether paid, limited or pro bono during this balance of this proceeding.  20 U.S.C. § 1415(i)(3)(A) & (B); 29 U.S.C. § 794a (b); 42 U.S.C. § 1988.

## VI.    PRAYER FOR RELIEF

Wherefore, the Plaintiff requests the following relief:

1.    That this Court accept jurisdiction over the violations of procedural safeguards and determine that Plaintiff substantial due process was denied under the color of law and award Plantiff reimbursement preliminary injunction for all education costs incurred since May 31, 2012; as well as order any compensatory education that may become necessary as C.K. is 16 years old, has suffered ongoing deprivations since first grade and PENTUCKET is interpreting their ambiguous settlement agreement terms which says "3 or 4 years" to mean 3 years, after C.K. failed 9th grade.  Michelle had no knowledge they would still have any authority over the determination between 3 or 4 years.

2.    That this Court accept jurisdiction over the Motion to Dismiss and provide a full de novo review of the resolution agreement and settlement agreement and in

consideration that no resolution meetings were ever afforded, Defendant's used their

own violations as a mechanism to obtain a settlement agreement which violates

Michelle's rights to notice and to a court approved settlement

3.      Jury Demand on Federal Tort Damages;

4.      Award Plaintiff all the reasonable attorney fees and costs which she will incur in

prosecuting this action in her own name;

5.      Grant such other relief as this Court deems just and appropriate.


Respectfully,


By:

Michelle Keating, Pro Se for Plaintiffs
4 Parker Road
Groveland, MA 01834
978-469-1887

Date: January 10, 2014